## Shoemaker's Appeal.

A testator, in the body of his will, gave a legacy to his daughter, without any restriction or limitation, but in the codicil directed "that as my daughter has been deprived of her hearing, it is my will that G. shall act as her guardian and agent, and I do hereby constitute and appoint him as such, to take charge of all her interest in my estate, and to manage the same to the best advantage, and to settle with her annually after she arrives at the age of twenty-one years, without the form of filing an account in the Orphans' Court, it being understood that said G. is to be allowed for his services, one per cent. on his accounts so settled, and it being further understood that said G. may at any time he may deem it proper and just, resign the guardianship and agency hereby put upon him." *Held,* that the true relation which the testator intended to create was strictly a personal one, to continue only so long as G. thought it proper to serve, and upon his resignation the daughter was entitled to the custody and exclusive control of her estate.

June 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Appeal from the Orphans' Court of *Franklin county :* Of May Term 1879, No. 179.

Appeal of Sarah C. Shoemaker from the decree of the court in the matter of the petition of Abraham Grove, trustee of said appellant. John Shartle, by his will, dated April 30th 1860, gave to each of his seven children the sum of $6000, and after making certain other bequests, directed that his said seven children should share equally in whatever excess should remain. Of this will he appointed Abraham Grove and Samuel Shartle executors.

By a codicil, bearing date 18th September 1860, he directed, among other things, as follows:

" I do hereby further direct that, as my daughter Sarah Catharine has been deprived of the use of her hearing, it is my will that the said Abraham Grove shall act as her guardian and agent, and I do hereby constitute and appoint him as such to take charge of all her interest in my estate, and to manage the same to the best advantage, and to settle with her annually from and after she arrives at the age of twenty-one years without the form of filing an account in the Orphans' Court, it being understood that said Grove is to be allowed for his services not exceeding one per cent. on his accounts so settled, and it being further understood that said Grove may, at any time he may deem it proper and just, resign the guardianship and agency hereby put upon him."

The said John Shartle died on the first of October 1860. His daughter Sarah Catharine is now about thirty-eight years of age, and is married to J. C. Shoemaker. She is the appellant in this case.

By virtue of the above provision in the will, Mr. Grove retained in his hands the share of the said Sarah Catharine, amounting to $7700. He paid over to Mrs. Shoemaker annually the interest accruing on these funds. On the 17th December 1878, he presented his petition to the Orphans' Court, setting forth that said trust had

become a burden to him, and claiming a right to resign the same at will, prayed the court to appoint a successor. Whereupon the court granted a rule upon all parties in interest to show cause, &c.,

To this rule Mrs. Shoemaker filed an answer, wherein she, inter alia, averred:

" That she really believed her deceased father intended, by said codicil, simply to repose in said Grove, who is your respondent's brother-in-law, a personal trust and confidence, and that her said father intended that said Grove might at any time he saw proper, hand her estate over to her in her own right; that she verily believes that her said father never contemplated, by the use of the words ' guardian and agent,' a trust in the legal acceptation of the term, but that he intended simply to request said Grove to aid her in the management of her estate, until such time, as he, Grove, thought proper to resign the trust and commit the estate to her, the said Sarah Catharine; that it is true, as stated in said will, that your respondent's hearing is somewhat defective, but not to such an extent as to disable her from transacting business or carrying on any ordinary conversation; that your respondent is fully capable and competent to take charge of her said estate, and manage it with care and prudence; that since the death of her said father, your respondent has married Isaac Shoemaker, of Montgomery township; that her husband is a well-to-do farmer of said township, possessed of an estate in his own right worth not less than $8000; that he is kind and affectionate to her, and sober and industrious, and your respondent believes, that if it should be the opinion of your honor that the estate cannot be turned over to her directly, but that the trust as claimed by petitioner is a valid continuing one, capable of being so transferred to a successor named by the court, that it would be to her interest and the interest of her child, that her said husband should be appointed her trustee, upon his giving security approved by the court; but that she insists first that she is entitled to said estate freed from any trust," &c., &c.

The court held that by the terms of the will Mr. Grove had an absolute right to resign; that the trust was an active one, and appointed Mr. Brewer in the place of Mr. Grove. This action was assigned for error by Mrs. Shoemaker, who took this writ.

*W. F. Patton* and *John Stewart*, for appellant.—The peculiarities of this trust, if it be a trust, are, the whole equitable estate is vested in the *cestui que trust;* she is given the unrestricted enjoyment of it, without limitation as to the time or amount, the restraint, if any, being only as to the management of the fund; the purpose of the trust is not to protect against improvidence, nor debts, nor the control or interference of a future husband; the duration of the trust is undefined, except that the trustee may resign it at will; no provision is made for any succession in the

trust, nor is there anything to indicate that it was to continue beyond the pleasure of the trustee named in the will.

If, whether active or passive, depends alone upon the character of the duties to be performed by the trustee, then we admit that the strict letter of the decisions makes this an active trust. For, since Barnett's Appeal, 10 Wright 392, which marks the return to the earlier doctrine of trusts, all the authorities agree that the actual management of the trust estate imposes active duties. But we gather from these decisions that the duties must not only be active, but of such a character that they necessarily require for their performance a vesting of the legal estate in the trustee, and then the language of the donor must fairly impart a vesting of the legal estate in the trustee for the accomplishment of his purposes. It was evidently the intent of the testator to hand over to the daughter the entire estate whenever its management became a burden to Mr. Grove.

*Brewer & Winger*, for appellee, Abraham Grove, trustee.—The trust was active: Barnett's Appeal, 10 Wright 392; Dodson *v.* Ball, 10 P. F. Smith 492; Earp's Appeal, 25 Id. 119; Ashhurst's Appeal, 27 Id. 464; Ash's Appeal, 30 Id. 497; Williams's Appeal, 2 Norris 377; Delbert's Appeal, 2 Id. 462; Bentley *v.* Kauffman, 5 Id. 99.

Again, no argument can be founded upon the fact that the trustee was permitted to resign. This was a mere personal privilege which the trustee possessed without the direction in the will. It must clearly appear that the testator intended the trust to terminate with the resignation of Mr. Grove, before such effect will be given to the direction with respect to resignation. No such intention appears anywhere. To impute such an intention would be to found it wholly upon conjecture.

In the use of the words guardian or trustee, the testator intended to clothe Mr. Grove with the powers of a trustee. The trust would have been considered good, even if no trustee had been named. In such case, the Orphans' Court would appoint one: Mann et al. *v.* Mullin, 3 Norris 297; County of Lawrence *v.* Leonard, 2 Id. 206.

Mr. Justice STERRETT delivered the opinion of the court, October 6th 1879.

The legacy to appellant, as given in the body of the will, is without any restriction or limitation; but, in the codicil the testator directs "that as my daughter Sarah Catharine has been deprived of the use of her hearing, it is ·my will that the said Abraham Grove shall act as her guardian and agent, and I do hereby constitute and appoint him· as such, to take charge of all her interest in my estate and to manage the same to the best advantage, and to settle with her annually from and after she arrives at the age of twenty-one years, without the form of filing any

account in the Orphans' Court, it being understood that said Grove is to be allowed for his services not exceeding one per cent. on his accounts so settled; and it being further understood that said Grove may at any time he may deem it proper and just resign the guardianship and agency hereby put upon him."

The reason assigned by the testator for appointing a "guardian and agent" for his daughter is her deafness. At the date of the codicil she was also a minor, and that fact no doubt suggested the guardianship with which he coupled the agency, designed to be operative when she attained her majority. It may be that he intended Mr. Grove should act simply as the business manager or agent of his daughter, and thus have control of so much only of her estate as she chose to leave in his hands, but the language employed is expressive of a different intent. It appears to have been the testator's wish that Mr. Grove, whom he selected as one of his executors, should retain and assume control of all her interest in his estate and manage the same to the best advantage. In view of his daughter's deafness he evidently thought that Mr. Grove could manage her business to better advantage than she could. The duties he was expected to perform, so long as he thought proper to discharge them, were of an active nature, and hence the trust cannot be considered a passive one. Assuming then that an active trust for the purpose of investment and general management was coupled with appellant's legacy, was it designed to be a permanent and continuing trust, or was it temporary, one of strictly personal confidence in his son-in-law, and limited in duration, at most, to the time he should consider it expedient to serve? We are of opinion it was the latter, and since Mr. Grove has deemed it "proper and just," to resign the guardianship and agency with which he was clothed by the testator, the special trust reposed in him has expired and the appellant is entitled to the custody and exclusive control of her estate.

There is no provision in the will for any succession in the trust, nor anything to indicate that the testator contemplated the appointment of a successor in case Mr. Grove declined to act or resigned. There is no intimation of any purpose to protect the testator's bounty to his daughter against her improvidence or the control of a future husband; nor to pass the corpus of the legacy or any part thereof over to her children or any one else. It is given absolutely and unconditionally to her, subject only to the power of management vested in Mr. Grove by the codicil. The scope of the trust is defined and restricted to Mr. Grove and its duration is limited by distinctly providing that he may resign and thus end the trust "at any time he may deem it proper and just." The supervision of the agency was given to the legatee by requiring an annual settlement with her personally after she attained her majority. The agent was thus made directly accountable to her alone "with-

[Shoemaker's Appeal.]

out the form of filing any account in the Orphans' Court." Whatever else may have been in the mind of the testator when he executed the codicil these provisions indicate that the trust relation which he intended to create was strictly a personal one, to continue only so long as his appointee deemed it proper to serve.

While the language employed by the testator might perhaps be susceptible of a different construction, the one we have adopted appears to accord best with the intention of the testator as we are enabled to gather it from the provisions of his will.

> The decree of the Orphans' Court is reversed, at the costs of the appellee to be paid out of the funds in his hands; and it is now ordered and decreed that the appellee upon settlement of his account do forthwith pay over to the appellant the balance that may be found in his hands, less costs.